**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| RAHEEM WILLIS,<br><br>Plaintiff,<br><br>v.<br><br>STEPHEN BUZAS, DR. CHANG, A. MILLER, LISA R. BAIRD, DENISE C. DANIEL, ARTHUR M. SANTOS, MARK E. HAMMER, NATALIE AUSTIN, SUNITA N. JAYAKUMAR, BYUNGHAK JIN, C. GREENWALT, and D. VARNER,<br><br>Defendants. | Civil Action No. 2:25-cv-0612<br><br>Judge William S. Stickman<br>Magistrate Judge Patricia L. Dodge |

**REPORT AND RECOMMENDATION**

## I. RECOMMENDATION

Presently before the Court are three motions to dismiss.[1] Two of the motions (ECF Nos. 39, 41) are brought by Defendants Natalie Austin, Lisa R. Baird, Dr. Chang, Denise C. Daniel, Mark E. Hammer, Sunita N. Jayakumar, and Byunghak Jin (collectively, "SCI Providers"). Defendant Arthur M. Santos ("Santos") separately moves for dismissal.[2] (ECF No. 50.)

For the reasons below, it is respectfully recommended that the motion to dismiss based on the Wellpath bankruptcy (ECF No. 41) be denied and the Rule 12(b)(6) motions to dismiss (ECF Nos. 39, 50) be granted in part.

[1] The Court's May 14, 2026 Report and Recommendation (ECF No. 64) addresses a fourth pending motion to dismiss (ECF No. 19) filed by Defendants Buzas, Greenwalt, Miller, and Varner (collectively, "DOC Defendants").

[2] References to "Defendants" throughout this Report and Recommendation refer collectively to the SCI Providers and Santos only, not the DOC Defendants.

## II. REPORT

### A. Procedural History

Plaintiff Raheem Willis ("Willis") commenced this pro se civil rights action on May 6, 2025 while incarcerated at State Correctional Institution at Greene ("SCI Greene"). He was granted leave to proceed in forma pauperis (ECF No. 6), and the Complaint was docketed on July 15, 2025. The Complaint asserts claims under the Eighth Amendment stemming from medical treatment Willis received while incarcerated.[3] Relevant here, he alleges that prison medical personnel failed to properly diagnose and treat his kidney disease and related symptoms. *See* ECF No. 9. Defendants are alleged to have been employed as doctors and/or physicians at SCI Greene. (*Id.* ¶¶ 7-14.) Each is sued in their individual and official capacity. (*Id.* ¶ 17.)

The SCI Providers filed two motions to dismiss on January 30 and February 2, 2026. (ECF Nos. 39, 41.) The first motion brought under Rule 12(b)(6) seeks dismissal on several grounds, including insufficiency of the allegations and statute of limitations. (ECF Nos. 39, 40.) The second motion (ECF No. 41) seeks dismissal based on a release of claims contained in the Chapter 11 reorganization plan of Wellpath Holdings, Inc. The Court ordered Willis to respond to both motions by March 11, 2026. (ECF No. 43.)

On February 20, 2026, Santos separately moved to dismiss the Complaint, or, in the alternative, for summary judgment based on failure to exhaust administrative remedies. (ECF No. 50.) In his brief, Santos also makes several of the same arguments as the SCI Providers. *See* ECF Nos. 51, 52. The Court set a briefing schedule (ECF No. 53), and Willis responded to the Santos motion on April 17, 2026 (ECF No. 55).[4]

---

[3] Willis has been incarcerated at SCI Greene for all events relevant to this litigation.

[4] As Santos points out in his reply brief, Willis' response fails to substantively address the arguments Santos raised in support of his motion. *See* ECF Nos. 55, 66.

On April 27, 2026, the SCI Providers filed a response noting Willis' lack of response to either motion and asking the Court to rule on the motions as unopposed. (ECF No. 58.) The Court issued a second order directing Willis to respond by May 12, 2026, and warned that failure to do so would result in the Court deciding the motions without his response. (ECF No. 61.) The SCI Providers filed additional notices on May 15, June 1, and July 9, 2026 (ECF Nos. 67, 71, 76), highlighting that Willis still had not responded to their motions but had submitted a response to the later-filed Santos motion (ECF Nos. 55, 56). To date, Willis has not responded to either of the SCI Providers' motions to dismiss.[5]

### B. Facts Alleged in the Complaint

According to the Complaint, Willis had several blood tests between May 8, 2015 and October 8, 2022 that indicated he "was having kidney problems." (*Id.* ¶ 19.) Defendants Jin, Austin, Santos, Jayakumar, Daniel, Baird, and Hammer are each alleged to have been responsible for drawing one of the blood samples that yielded abnormal results. (*Id.* ¶¶ 25-31.) Willis was not informed of his test results, nor did he receive treatment for kidney-related issues at that time. (*Id.* ¶ 19.)

Willis filed several Sick Call Requests and was seen by SCI Greene medical staff in 2023. (*Id.* ¶¶ 33-35.) Copies of staff request slips, grievances, and sick call notifications are attached to the Complaint as exhibits. On August 1, 2023, Defendants Jin and Chang allegedly told Willis for the first time that he had "stage 2 or 3 kidney disease / failure." (*Id.* ¶¶ 20, 32.)

The Complaint alleges Defendants were deliberately indifferent by failing to provide Willis adequate medical care or refer him to a kidney specialist despite knowing about his kidney-related

[5] On May 29, 2026, Willis also filed a motion for extension of time to file objections to the May 14, 2026 Report and Recommendation. (ECF No. 69.) The motion was granted and Willis filed objections and a brief in support on July 10, 2026. (ECF Nos. 77, 78.) Willis subsequently moved to stay these proceedings on July 21, 2026. (ECF No. 80.)

issues since May 2015. (*Id.* ¶¶ 37-38.) Willis asserts that this delay in treatment resulted in ongoing harm in the form of diminished kidney function and incontinence, and claims that he "at time simply drift[s] off into sleep for extended periods of time." (*Id.* ¶¶ 39, 41.) Among other things, he seeks relief in the form of a preliminary and permanent injunction ordering immediate medical treatment and outside hospital care to be properly diagnosed by a kidney disease specialist, compensatory, and punitive damages. (*Id.* ¶¶ 42-47.)

### C. Legal Standard

A complaint may be dismissed, in whole or in part, for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To overcome a 12(b)(6) motion, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To decide a 12(b)(6) motion, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). The court's plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Thus, in assessing the sufficiency of a complaint, a court must: (1) outline the elements plaintiff must plead to state a claim for relief; (2) peel away allegations that amount to mere conclusions and are thus not entitled to the assumption of truth; and (3) look for well-pled factual allegations,

assume their veracity, and determine whether they plausibly give rise to an entitlement to relief. *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

Additionally, the filings of a pro se party must be liberally construed and a pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (internal quotation marks omitted); *see also Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011) ("The obligation to liberally construe a *pro se* litigant's pleadings is well-established."). Moreover, the court must "apply the relevant legal principle even when the complaint has failed to name it." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013). That said, "pro se litigants still must allege sufficient facts in their complaints to support a claim[,]" and "they cannot flout procedural rules—they must abide by the same rules that apply to all other litigants." *Id.* at 245.

**D. <u>Discussion</u>**

1. <u>Statute of Limitations</u>

Defendants argue the Complaint should be dismissed because Willis' claims are time-barred. (ECF Nos. 40 at 17-19; 51 at 14.)

As discussed in the May 14, 2026 Report and Recommendation, limitations defenses may be raised only by a 12(b)(6) motion "if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (quoting *Robinson v. Johnson*, 313 F.3d 128, 134-35 (3d Cir. 2002)) (citation modified). "Thus, a district court may grant a motion under Rule 12(b)(6) raising a limitations defense if 'the face of the complaint' demonstrates that the plaintiff's claims are untimely." *Stephens v. Clash*, 796 F.3d 281, 288 (3d Cir. 2015) (quoting *Schmidt*, 770

F.3d at 249).

Willis' claims are asserted under 42 U.S.C. § 1983 and are therefore subject to a two-year statute of limitations. *See Randall v. City of Phila. Law Dep't*, 919 F.3d 196, 198 (3d Cir. 2019). As the Court already explained, however, a cause of action accrues for statute of limitations purposes when the plaintiff knows or has reason to know of the injury that constitutes the basis of the cause of action. *See, e.g.*, *Sameric Corp. of Delaware, Inc. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998). Construing the pleadings liberally, the Court again concludes that Willis' claims premised on his kidney disease accrued when he was first made aware of his diagnosis on August 1, 2023. Because Willis filed his initial complaint on May 6, 2025, his claims are timely.

2. Bankruptcy

The Court takes judicial notice of the following facts. On November 11, 2024, Wellpath Holdings, Inc. ("Wellpath") and certain of its affiliates filed petitions under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas. On May 1, 2025, the bankruptcy court confirmed Wellpath's Chapter 11 reorganization plan ("The Plan"). *See In re Wellpath Holdings, Inc.*, No. 24-90533 (Bankr. S.D. Tex. May 1, 2025). The Plan became effective on May 9, 2025. *See* ECF No. 42-1.

Under The Plan, all claims and causes of action against Wellpath and the affiliated debtor-companies that arose before November 11, 2024, have been discharged and holders of such claims are permanently enjoined from, among other things, commencing or continuing any proceeding of any kind in connection with such claims. *See* 11 U.S.C. § 524 (a) ("A discharge in a case under this title . . . (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor . . . .").

The Plan also includes a Third-Party Release relating to claims against current and former Wellpath employees. Article IX of The Plan requires that any holder of such a claim against an employee of Wellpath or its affiliates who is or was an incarcerated individual "opt out" of the Third-Party Release set forth in Section IX.D of The Plan. Article IX.F of The Plan provides that holders of claims subject to the Third-Party Release who failed to opt out by the court-imposed deadline of July 30, 2025, are permanently enjoined from "commencing or continuing any action or proceeding of any kind on account of or in connection with or with respect of" any released claims.

It is undisputed that Willis is and was incarcerated. As already discussed, the claims asserted in the Complaint accrued when Willis first learned of his diagnosis on August 1, 2023. Thus, because he was an incarcerated individual and his claims arose before November 11, 2024, Willis was required to opt out of the Third-Party Release to preserve any claims against employees of Wellpath or the affiliated debtor-companies.

As stated above, Willis failed to respond to the SCI Providers' motion despite multiple Court orders and notices from the opposing party. Other courts have found a plaintiff's failure to show that they affirmatively opted out of the Third-Party Release warrants dismissal:

> Plaintiff has neither challenged the bankruptcy court's notice determination in that proceeding nor presented any evidence to this Court that he timely opted out of the plan's Third-Party Release, despite having been given notice of the bankruptcy proceeding prior to the opt-out deadline. Although courts accord imprisoned *pro se* litigants a measurable degree of latitude, "[a]t the end of the day, they cannot flout procedural rules—they must abide by the same rules that apply to all other litigants." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).
>
> Despite the Court ordering Mr. Thomas to respond to Dr. Bazel's Motion, ECF 70, he has failed to do so. As the Third Circuit has observed, "there are limits to [courts'] procedural flexibility," *Mala*, 704 F.3d at 245, and even as an incarcerated *pro se* litigant, Mr. Thomas is nonetheless "responsible for his failure to . . . comply with [the] [C]ourt's orders," *Briscoe v. Klaus*, 538 F.3d 252, 258 (3d Cir. 2008).

> Because Mr. Thomas has not provided any evidence that he timely opted out of the Third-Party Release, I must conclude that Dr. Bazel has been released and discharged from any claims arising out of the events pleaded in the Complaint and permanently enjoined from pursuing these claims.

*Thomas v. Sorber*, 2026 WL 753594, at *6 (E.D. Pa. Mar. 17, 2026) (alteration in original). *See also Gavilan-Cruz v. Pennsylvania Dep't of Corr.*, 2026 WL 324594, at *2 (M.D. Pa. Feb. 6, 2026) ("[Plaintiff] did not offer any allegation or evidence that he had opted out of the Third-Party Release or sought any other relief in the Chapter 11 proceeding, and therefore all claims against [the individual defendants] were dismissed without prejudice to [plaintiff's] right to pursue relief in the bankruptcy court."); *Williams v. The Geo Group*, 2025 WL 2325649, at *9 n.11 (E.D. Pa. Aug. 11, 2025) ("[A]bsent any information that [plaintiff] has opted out of the Third-Party Releases or otherwise taken action in the Bankruptcy Court, the claims against [defendant] or any other Wellpath employee may be barred by the injunction contained in the confirmed Chapter 11 Plan.").

This case, however, is not as clear. In their briefing, the SCI Providers describe themselves as "employees of the medical vendor" Correct Care Solutions or Wellpath LLC[6] at all relevant times. (ECF No. 40 at 16.) Their motion regarding the bankruptcy argues that Willis is permanently enjoined from brining claims against them given his failure to opt out of the Third-Party Release. The Complaint, however, alleges that Defendants were employed by the Department of Corrections ("DOC") and makes no mention of Wellpath or its affiliates. No evidence been presented to support the SCI Providers' employment status. Because the Court must construe the allegations of the Complaint liberally, and the SCI Providers have not shown that they were Wellpath employees, the Court cannot grant the SCI Providers' request for dismissal based on the

[6] Correct Care Solutions and Wellpath LLC are affiliated companies encompassed by The Plan.

bankruptcy, particularly when the Complaint is subject to dismissal on other grounds.[7]

Santos also seeks dismissal based on Willis' failure to opt out of the Third-Party Release despite admitting that he was never employed by Wellpath. At all relevant times, Santos worked for Alumni Staffing, LLC, which he asserts "contracted directly with Wellpath to offer healthcare to prisoners in the Department of Corrections." (ECF No. 51 at 16.) Because it is undisputed that Santos was not employed by Wellpath or an affiliated debtor encompassed by The Plan, Willis' claims against him are not subject to the Third-Party Release. Thus, it is recommended that his request for dismissal on grounds related to the Wellpath bankruptcy also be denied.

3. Failure to Exhaust[8]

Santos next seeks dismissal of all claims against him on the basis that Willis failed to exhaust his administrative remedies. Santos does not dispute that Willis filed a grievance (Grievance No. 1046944) and appealed it to a final decision. He argues, however, that the grievance did not properly name him and instead referred only to a "Dr. Arthurm." He further contends that the grievance did not specifically criticize the care he provided Willis, thereby failing to place prison officials on notice of a claim against him. *See* ECF No. 51 at 5-7.

The Prison Litigation Reform Act ("PLRA") provides that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

[7] The SCI Providers also seek dismissal of any official-capacity claims, arguing that such claims are inapplicable to employees of a private entity. (ECF No. 40 at 15-16.) Because the Court cannot conclude that the SCI Providers were Wellpath employees at this juncture, dismissal of these claims would be similarly inappropriate.

[8] The portion of a defendants' motion raising exhaustion as a defense is typically treated as a motion for summary judgment under Rule 56. Here, however, Willis attached his grievances and the subsequent appeals to the Complaint. The Court therefore declines to convert Santos' motion to a summary judgment motion, as the relevant grievances may be reviewed as part of the pleadings.

42 U.S.C. § 1997(e)(a). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion is a "non-jurisdictional prerequisite to an inmate bringing suit" and when raised by a defendant it constitutes a threshold issue to be addressed by the court. *See, e.g.*, *Rinaldi v. United States*, 904 F.3d 257, 265 (3d Cir. 2018). The defendant carries the burden of asserting and proving a plaintiff's failure to exhaust. *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

The Supreme Court has held that the PLRA requires "proper exhaustion," that is, timely exhaustion under the procedures described. *Woodford v. Ngo*, 548 U.S. 81 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Brock*, 549 U.S. at 218.

The Pennsylvania DOC has adopted a three-tier grievance system for state prisoners. Under the policy, a prisoner must first submit a written grievance for initial review by a facility or regional grievance coordinator. If the prisoner is dissatisfied with the result of the initial review, they must appeal in writing to the facility manager. At the final stage, a written appeal must be submitted to the Secretary's Office of Inmate Grievances and Appeals. *See* DC-ADM 804; *Spruill v. Gillis*, 372 F.3d 218, 232 (3d Cir. 2004). The policy requires that inmate grievances "identify individuals directly involved in the events." *See Green v. Maxa*, 2020 WL 1249205, at *5 (W.D. Pa. Mar. 16, 2020). The Third Circuit has held that, "in the absence of any justifiable excuse, an inmate's failure to properly identify a defendant constitutes a failure to properly exhaust his administrative remedies under the PLRA." *Williams v. Pennsylvania Dep't of Corr.*, 146 F. App'x 554, 557 (3d

Cir. 2005).

In Grievance 1046944, Willis sets forth essentially the same allegations as the Complaint. Although the grievance does list "Dr. Arthurm" as one of the doctors, Willis attached printouts of his "bloodtests [sic] from years 2018-2020" (ECF No. 9-6 at 2), showing the abnormal results that he claims each doctor named in the grievance was responsible for. At the top of the first page, "SANTOS, ARTHUR M" is named as the doctor that performed the test. *See* ECF No. 51-1 at 4. Thus, to say Santos was not properly identified in the grievance is inaccurate. Although Willis did not address the issue of exhaustion in his response to Santos' motion, his grievance, which is also attached to the Complaint, show that he fully appealed the decision through both levels of DOC review. Willis therefore properly exhausted his administrative remedies. As such, Santos' motion should be denied with respect to exhaustion.

4. <u>Failure to State a Claim</u>

While he responded to the motion to dismiss of Santos, Willis did not respond to the SCI Providers' motion to dismiss by March 11, 2026 despite being ordered to do so. The Court issued a second order directing Willis to respond by May 12, 2026 and warned him that his failure to respond by that deadline would result in the Court deciding the motions without his response. (ECF No. 61.) No response has been filed. Thus, the Court will proceed to decide the SCI Providers' motion to dismiss for failure to state a claim without a response from Willis.

Willis alleges that Defendants were deliberately indifferent to his serious medical needs. To succeed on an Eighth Amendment denial of medical care claim, the plaintiff must demonstrate: (1) that they had a serious medical need; and (2) that prison officials were deliberately indifferent to that need. *See Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference may be manifested by intentional refusal to provide care, delayed medical treatment for non-medical

reasons, denial of prescribed medical treatment, denial of reasonable requests for treatment that results in suffering or risk of injury, *see Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the fact of resultant pain and risk or permanent injury." *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990).

Defendants first argue that Willis did not have a serious medical need because "[a]t no time did Willis have a serious kidney disease, a kidney injury, required kidney treatment, or required kidney surgery." (ECF No. 40 at 8.) The SCI Providers cite the blood test results, contending that the "abnormalities" relied on in the Complaint have nothing to do with kidney disease and asserting that Willis instead received treatment for chronic hypertension. (*Id.* at 8-9.)

But accepting all factual allegations as true, as is required at this stage of litigation, the Court concludes that the first element of Willis' Eighth Amendment claim is established by his allegations that he has been diagnosed with stage 2 or 3 kidney failure/disease, causing him to experience incontinence and related symptoms. While Defendants may be able to show that Willis does not have kidney disease at a future stage of this action, for now the allegations in the Complaint are sufficient to establish a serious medical need.

As to the second element of his Eighth Amendment claim, Defendants contend that the allegations in the Complaint simply do not amount to deliberate indifference. They argue that Willis' mere dissatisfaction with the care he received at SCI Greene is insufficient to support a claim under the Eighth Amendment.

Even if some of Defendants' conclusions relating to the bloodwork were incorrect, "[i]t is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.'" *Rouse*, 182 F.3d at 197. "[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights."

*Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990); *see also Kennedy v. S.C.I. Rockview Emps.*, 2010 WL 4853959, at *4 (M.D. Pa. Nov. 22, 2010) (quoting *Inmates of Allegheny Cty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979)) ("[C]ourts give prison medical personnel wide latitude in the diagnosis and treatment of inmates [and] should 'disavow any attempt to second guess the propriety or adequacy of a particular course of treatment . . . which remains a question of sound professional judgment.'"). Simply put, Willis' disagreement with the nature of the medical treatment he received is not enough to establish deliberate indifference. *See Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

Additionally, beyond meeting the minimum pleading standards required to plausibly state a claim, a § 1983 plaintiff also bears the burden of showing that each named defendant was personally involved in the alleged constitutional violation. *See Saisi v. Murray*, 822 Fed. Appx. 47, 48 (3d Cir. 2020). To overcome a motion to dismiss, allegations must be made with appropriate particularity and sufficiently describe the defendant's participation in or actual knowledge of and acquiescence in the alleged misconduct. *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) (citing *Rode*, 845 F.2d at 1207); *see also Mack v. Clark*, 2022 WL 2669510, at *5 (W.D. Pa. Jul. 11, 2022) ("Allegations that broadly implicate multiple defendants without delineating individual conduct are legally insufficient.").

Here, the Complaint contains a blanket allegation that "each defendant was 'personally involved' in the denial of Plaintiff's Eighth Amendment right to be free from 'Agony' cruel and unusual punishment." (ECF No. 9 ¶ 17) (emphasis in original). Aside from the introductory paragraphs vaguely describing their roles at SCI Greene, the Complaint alleges only that Defendants Jin, Austin, Santos, Jayakumar, Daniel, Baird, and Hammer performed one blood draw

each on Willis. *See* ECF No. 9 ¶¶ 25-31. Defendants Jin and Chang are alleged to be the individuals who relayed the kidney disease diagnosis to Willis. (*Id.* ¶ 20.) The Complaint contains no other allegations related to Chang. It also fails to describe any specific conduct or involvement on the part of any of the Defendants in the alleged violation of Willis' Eighth Amendment rights. *See Mack*, 2022 WL 2669510, at *11 ("[The plaintiff's] pleading should explain to the Court what happened by specifically describing how each Defendant's acts or omissions caused the alleged violations.").

Thus, even assuming Willis' allegations are true, they fail to show that Defendants were involved in any actionable wrongdoing. Because the Complaint does not plausibly allege that the SCI Providers or Santos were deliberately indifferent to Willis' medical needs, the § 1983 claims against them should be dismissed.[9]

Typically, when dismissing a claim for failure to state a claim, "a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 236 (citing *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002)). "An amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted." *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000).

Because it may be possible for amendment to cure the claims against these Defendants, it is recommended that the dismissal be without prejudice and that Willis be granted leave to amend solely to establish personal involvement of the SCI Providers and Santos.

---

[9] Defendants also seek dismissal of any *Monell* and state-law claims. While Willis does include some boilerplate references to supplemental jurisdiction (ECF No. 9 ¶ 1), and "engag[ing] in a custom, practice and / or policy" (*id.* ¶ 38), the Court construes the Complaint as only asserting Eighth Amendment § 1983 claims against Defendants.

## III. CONCLUSION

For these reasons, it is respectfully recommended that:

1. The SCI Providers' motion to dismiss based on the Wellpath bankruptcy (ECF No. 41) should be denied without prejudice;

2. Santos' motion to dismiss for failure to exhaust administrative remedies should be denied;

3. The motions of the SCI Providers (ECF No. 39) and Santos (ECF No. 50) to dismiss the Eighth Amendment claims for failure to state a claim should be granted without prejudice and with leave to amend.

It is further recommended that if Willis is given leave to amend his Eighth Amendment claim against the SCI Providers and Santos, any such amendment must allege, separately for each defendant, sufficient facts that could support their personal involvement in conduct that represents deliberate indifference to a serious medical need.

## IV. NOTICE

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the parties may, within (14) days, file objections to this Report and Recommendation. Failure to do so will waive the right to appeal. *Brightwell v. Lehman*, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

Dated: July 30, 2026

/s/Patricia L. Dodge
PATRICIA L. DODGE
UNITED STATES MAGISTRATE JUDGE